IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NAVID EBRAHIMI,

    Plaintiff,

vs.                                                                               No. CIV 24-0340 JB/GBW

LIBERTY OILFIELD SERVICES, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on the Defendant Liberty Oilfield Services, LLC's Motion for Summary Judgment, filed February 6, 2025 (Doc. 77)("MSJ"). The Court held a hearing on August 13, 2025. See Clerk's Minutes at 1, filed August 13, 2025 (Doc. 161). The primary issues are: (i) whether New Mexico or New York law applies to Plaintiff Navid Ebrahimi's claims and Defendant Liberty Oilfield Services, LLC's defenses in this personal injury action, where the underlying injury occurs in New Mexico, but the Master Client Agreement, filed March 7, 2025 (Doc. 96-1)("Master Client Agreement"), between Liberty Oilfield and Wavsys, LLC -- the employee leasing company which leases Ebrahimi to Liberty Oilfield to perform the work leading to the underlying injury -- has a New York choice-of-law provision; and (ii) whether the New Mexico Workers' Compensation Act, N.M.S.A. §§ 52-1-1 to 52-10-1 ("NM Worker's Compensation Act"), provides the exclusive remedy for Ebrahimi's claims and thereby precludes Ebrahimi from suing Liberty Oilfield for personal injury damages, where the Master Client Agreement requires Wavsys LLC to maintain worker's compensation insurance covering Ebrahimi's work for Liberty Oilfield. The Court concludes that: (i) New Mexico law governs Ebrahimi's claims against Liberty Oilfield, because: (a) the Master Client Agreement's choice-of-law provision applies to Liberty Oilfield and Wavsys LLC's relationship, rather than to Liberty

Oilfield and Ebrahimi's relationship; (b) Ebrahimi's employment relationship with Liberty Oilfield is localized to New Mexico; and (c) Liberty Oilfield employs three or more workers; and (ii) the NM Worker's Compensation Act precludes Ebrahimi's personal injury claims against Liberty Oilfield, because: (a) Liberty Oilfield complies with the NM Worker's Compensation Act's insurance requirements; (b) Ebrahimi is injured while performing work in the scope of his employment with Liberty Oilfield; and (c) the accident causing Ebrahimi's injury arises out of his employment with Liberty Oilfield and is not intentionally self-inflicted.  Accordingly, the Court grants the MSJ and dismisses the case with prejudice.

## **FACTUAL BACKGROUND**

The Court draws the factual background from the parties' undisputed material facts in their briefs.[1]  Undisputed facts go above-the-line in the text.  The Court discusses the parties' purported factual disputes in the footnotes.

---

[1] Concerning the procedural rules that govern the movant's submission of a reply to summary judgment motion, D.N.M.LR-Civ. 56.1(b) provides:

> The response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted. The response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion.  Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies.

D.N.M.LR-Civ. 56.1(b).

In submitting the Navid Ebrahimi's Response to Defendant Liberty Oilfield Services, LLC's Motion for Summary Judgment at 2, filed April 30, 2025 (Doc. 118)("MSJ Response"), Ebrahimi does not properly classify each fact in a lettered order, nor does he properly reference the respective letter of each of the MSJ's facts that he disputes, as D.N.M.LR-Civ. 56.1(b) requires.  The Court will not, however, disregard Ebrahimi's otherwise sound disputations in his responses on procedural grounds.  See Roemer v. Bd. of Regents of N.M. State Univ., No. CIV 22-0524 JB/JHR, 2025 WL 641228, at *3 n.4 (D.N.M. Feb. 27, 2025), appeal docketed No. 25-2033(10th Cir. March 28, 2025)(declining to disregard "otherwise sound disputations" of material facts,

Liberty Oilfield and Wavsys LLC enter into the Master Client Agreement on January 15, 2021. See MSJ at 2 (asserting this fact); Navid Ebrahimi's Response to Defendant Liberty Oilfield Services, LLC's Motion for Summary Judgment at 2, filed April 30, 2025 (Doc. 118)("MSJ Response")(admitting this fact).[2] The Master Client Agreement requires Wavsys LLC, an employee leasing company, to maintain worker's compensation covering Ebrahimi, who performs oilfield work for Liberty Oilfield in Jal, New Mexico. See MSJ at 2 (asserting this fact); MSJ Response at 2-3 (admitting this fact). Ebrahimi alleges that, on July 2, 2022, he is injured in Jal after Matt Thomas, a Liberty Oilfield supervisor, directs him to carry heavy equipment. See MSJ at 2 (asserting this fact); MSJ Response at 2 (admitting this fact). Ebrahimi's alleged injury is the subject of a worker's compensation claim in Texas. See MSJ at 3 (asserting this fact); MSJ

---

where the non-moving party does not properly classify his factual disputes according to the local rules); Tapia v. City of Albuquerque, 10 F. Supp. 3d 1207, 1252 (D.N.M. 2014)(Browning, J.)("[T]he Court . . . generally does not grant dispositive motions on procedural defaults alone."). Because Ebrahimi does not classify properly his proposed material facts, or his disputes regarding Liberty's proposed undisputed material facts, the Court uses Ebrahimi's "Factual Background" section to evaluate whether there are any disputed material facts. MSJ Response at 2-5.

[2]Liberty also asserts that the Master Client Agreement "was in effect July 2, 2022." MSJ at 2. At the hearing, Ebrahimi disputes this assertion "on its face as far as that the agreement extended to the time of the injury," i.e., July 2, 2022. Draft Transcript of Hearing at 26:19-21 (taken August 13, 2025)(Koch)(The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers). Whether the Master Agreement is in effect on July 2, 2022, is a legal question, and, thus, this dispute is a legal one, which the Court analyzes fully in this Memorandum Opinion. See infra, at 12-13 n.5. Regardless, Ebrahimi does not dispute that Liberty and Wavsys enter into the Master Client Agreement on January 15, 2021. Accordingly, the Court concludes that this fact is undisputed.

Separately, Ebrahimi challenges whether the Master Client Agreement, which Liberty Oilfield produces in discovery, is authentic. See Tr. at 37:14-39:15 (Koch, Court). Liberty Oilfield neutralizes this concern, however, by filing a sworn affidavit attesting to the Master Client Agreement's authenticity. See Affidavit of Tracee Quinnell at 1-2 (executed August 25, 2025), filed August 25, 2025 (Doc. 162-1). Because Ebrahimi does not support his assertion that the Master Client Agreement is not authentic with record evidence, and Liberty provides a sworn affidavit attesting to its authenticity, the Court does not adopt his assertion.

Response at 10 (admitting this fact); Draft Transcript of Hearing at 27:6-24 (taken August 13, 2025)(Koch)("Tr.")[3](admitting that "we don't dispute that happened").

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Schs., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(alteration in Herrera v. Santa Fe Pub. Schs.)). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)("Celotex").

> Before the court can rule on a party's motion for summary judgment, the moving party must satisfy its burden of production in one of two ways: by putting evidence into the record that affirmatively disproves an element of the nonmoving party's case, or by directing the court's attention to the fact that the non-moving party lacks evidence on an element of its claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323-25. On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007)(internal quotations and brackets omitted).

Plustwik v. Voss of Nor. ASA, No. 11-0757, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(Sam, J.)(emphasis added). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex, 477

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

- 4 -

U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[4]  Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)("Liberty Lobby").  In American Mechanical Solutions, LLC v. Northland Piping, Inc., 184 F. 3d 1030 (D.N.M. 2016)(Browning, J.), the Court granted summary judgment for the defendant when the plaintiff did not offer expert evidence supporting causation or proximate causation in its breach-of-contract or breach-of-the-implied-warranty-of-merchantability claims.  See 184 F. 3d at 1075-78.  The Court reasoned that the plaintiff could prove neither the breach-of-contract claim's causation requirement nor the breach-of-the-implied-warranty-of-merchantability claim's proximate-causation requirement with mere common knowledge, see 184 F. Supp. 3d at 1073, and so New Mexico law required that the plaintiff bolster its arguments with expert testimony, see 184 F. Supp. 3d at 1067, which the plaintiff had not provided, see 184 F. Supp. 3d at 1075.  The Court determined that, without the requisite evidence, the plaintiff failed to prove "an essential element of the nonmoving party's case . . . render[ing] all other facts immaterial."  Am. Mech. Sol., LLC v. Northland Piping, Inc., 184 F. Supp. 3d at 1075 (quoting Plustwik v. Voss of Nor. ASA, No. 11-00757, 2013 WL 1945082, at *1 (D. Utah 2013)(Sam, J.)).

    Thus, if a plaintiff has the burden of proof, and the plaintiff has no competent evidence, the defendant, even without any competent evidence itself, may secure summary judgment by pointing out the plaintiff's lack of competent evidence.  See Celotex, 477 U.S. at 323-25 (providing that summary judgment is proper where a plaintiff lacks evidence on an essential element of its

---

[4]Although the Honorable William J. Brennan, Jr., then-Associate Justice of the Supreme Court, dissented in Celotex, this sentence is widely understood to be an accurate statement of the law.  See 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

case); Am. Mech. Sols., LLC v. Northland Piping, Inc., 184 F. Supp. 3d at 1075 (granting summary judgment because plaintiff lacked evidence on causation); Morales v. E.D. Entyre & Co., 382 F. Supp. 2d 1252, 1272 (D.N.M. 2005)(Browning, J.)(granting summary judgment because plaintiff lacked competent evidence that the defendants defectively manufactured an oil distributor).  A conclusory assertion that the plaintiff lacks evidence is insufficient, however, to secure summary judgment; the defendant must make some evidentiary showing that the plaintiff lacks competent evidence.  See Halley v. Huckaby, 902 F.3d 1136, 1143 (10th Cir. 2018)(stating that summary judgment may be warranted if the movant notes a lack of evidence for an essential element of the claim).  See also 11 James Wm. Moore et al., Moore's Federal Practice § 56.40[1][b][iv], at 56-109 to -111 (3d ed. 2018).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (citing Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d at 1241)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Liberty Lobby, 477 U.S. at 259.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson

v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (quoting Coleman v. Darden, 595 F.2d 533, 536 (10th Cir. 1979)).

A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)(McConnell, J.)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. v. Omer, No. 07-2123-JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)). To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Liberty Lobby, 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. See Liberty Lobby, 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)("Schuylkill")); Vitkus v. Beatrice Co., 11 F.3d at 1539.

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. [First Nat. Bank of Ariz. v.] Cities Service,[] 391 U.S. [253], 288-[89] . . . . If the evidence is merely colorable, Dombrowski v. Eastland, 387 U.S. 82, 87 . . . (per curiam), or is not significantly probative, Cities Service, . . . at 290 . . . summary judgment may be granted.

Liberty Lobby, 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, cannot find for the nonmoving party, "there is no 'genuine issue for trial.'" Matsushita Elec. Indus.

- 7 -

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Liberty Lobby, 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Liberty Lobby, 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor and construe all evidence in the light most favorable to the nonmoving party. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Liberty Lobby, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); Tolan v. Cotton, 572 U.S. 650, 651 (2014). Fourth, the court cannot decide any credibility issues. See Liberty Lobby, 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts. In Scott v. Harris, 550 U.S. 372, the United States Supreme Court concludes that summary judgment is appropriate where video evidence clearly contradicted the plaintiff's version of the facts. See 550 U.S. at 378-81. The Supreme Court explains:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

> requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. [at] 247-248 . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

<u>Scott v. Harris</u>, 550 U.S. at 380-81 (alterations in <u>Scott v. Harris</u>)(emphasis in <u>Liberty Lobby</u>). The Tenth Circuit applies this doctrine in <u>Thomson v. Salt Lake County</u>, 584 F.3d 1304 (10th Cir. 2009), and explains:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'" <u>York v. City of Las Cruces</u>, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting <u>Scott</u>, 550 U.S. at 380); <u>see also</u> <u>Estate of Larsen ex rel. Sturdivan v. Murr</u>, 511 F.3d 1255, 1258 (10th Cir. 2008).

<u>Thomson v. Salt Lake Cty.</u>, 584 F.3d at 1312 (second alteration in <u>Thomson v. Salt Lake Cty.</u>, third and fourth alterations in <u>York v. City of Las Cruces</u>). "The Tenth Circuit, in <u>Rhoads v. Miller</u>, [352 F. App'x 289 (10th Cir. 2009),] explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony." <u>Lymon v. Aramark Corp.</u>, 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.), <u>aff'd</u>, 499 F. App'x 771 (10th Cir. 2012).

Parties may allege new claims in motions for summary judgment. <u>See</u> <u>Evans v. McDonald's Corp.</u>, 936 F.2d 1087, 1090-91 (10th Cir. 1991). When a party raises a new claim in a motion for summary judgment, a court treats the motion for summary judgment as a request to amend the complaint pursuant to rule 15 of the Federal Rules of Civil Procedure. <u>See</u> <u>Viernow v. Euripides Dev. Corp.</u>, 157 F.3d 790 n.9 (10th Cir. 1998). The Tenth Circuit states:

> [A]s a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits."

Evans v. McDonald's Corp., 936 F.2d at 1090-91 (quoting 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1219, at 94 (4th ed. 2021)("Wright & Miller")). While the purpose of "fact pleading" is to give defendants fair notice of claims against them "without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery," plaintiffs may not "wait until the last minute to ascertain and refine the theories on which they intend to build their case." Evans v. McDonald's Corp., 936 F.2d at 1091.

## ANALYSIS

The Court undertakes its analysis in two sections. First, the Court concludes that New Mexico law governs Ebrahimi's claims against Liberty Oilfield, because: (i) the Master Client Agreement's choice-of-law provision applies to Liberty Oilfield and Wavsys LLC's relationship, rather than to Liberty Oilfield and Ebrahimi's relationship; (ii) Ebrahimi's employment relationship with Liberty Oilfield is localized to New Mexico; and (iii) Liberty employs three or more workers. Second, the Court concludes that the NM Worker's Compensation Act precludes Ebrahimi's personal injury claims against Liberty Oilfield, because: (i) Liberty Oilfield complies with the NM Worker's Compensation Act's insurance requirements; (ii) Ebrahimi is injured while performing work in the scope of his employment with Liberty Oilfield; and (iii) the accident causing Ebrahimi's injury arises out of his employment with Liberty Oilfield and is not intentionally self-inflicted.

**I.    NEW MEXICO LAW GOVERNS EBRAHIMI'S CLAIMS AGAINST LIBERTY OILFIELD.**

New Mexico law governs Ebrahimi's claims against Liberty Oilfield. The Master Client Agreement states: "This Agreement shall be governed by and construed in accordance with the laws

of the State of New York, without regard to the conflict of laws or choice of law provisions thereof." Master Client Agreement § 15.6, at 7, filed April 30, 2025 (Doc. 119-1)("Master Client Agreement"). This choice-of-law provision applies to the Master Client Agreement between Liberty Oilfield and Wavsys LLC, which concerns Liberty Oilfield and Wavsys LLC's contractual rights and responsibilities against one another. This New York choice-of-law provision does not apply to Ebrahimi's private tort action against Liberty Oilfield, which concerns Ebrahimi and Liberty Oilfield's common-law rights and responsibilities against one another. Instead, New Mexico law -- specifically, the NM Worker's Compensation Act -- applies to this dispute. The NM Worker's Compensation Act applies to employees who are "principally localized," N.M.S.A. § 52-1-64, in New Mexico and to "employers of three or more workers," N.M.S.A. § 52-1-6. See Cawyer v. Cont'l Exp. Trucking, 1997-NMCA-008, ¶¶ 1-5, 26-28, 122 N.M. 819, 820-21, 824-25, 932 P.2d 509, 510-11, 514-15 (affirming award of New Mexico worker's compensation benefits to a trucker who is injured outside of New Mexico and who signs an agreement with his employer "stating that Arkansas law would govern the resolution of workers' compensation claims," because the trucker's employment is "principally localized" in New Mexico and his "customary route was between New Mexico and California"). Ebrahimi's employment relationship with Liberty Oilfield is entirely localized to New Mexico, and Ebrahimi does not allege that Liberty Oilfield employs less than three people. See supra, at 3-4. Thus, the NM Worker's Compensation Act governs Ebrahimi's private tort action here.

## II. THE NM WORKER'S COMPENSATION ACT PRECLUDES EBRAHIMI'S SUIT AGAINST LIBERTY.

The NM Worker's Compensation Act precludes Ebrahimi's suit against Liberty Oilfield. The NM Worker's Compensation Act has an exclusive remedy provision that bars an injured employee from recovering personal injury damages against an employer when three elements are satisfied: (i) at the time of the accident, the employer complies with the NM Worker's

Compensation Act's insurance requirements, i.e., that the employer maintains worker's compensation insurance covering the injured employee; (ii) at the time of the accident, "the employee is performing service arising out of and in the course of his employment"; and (iii) "the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted." N.M.S.A. § 52-1-9. See Paehl v. Lincoln Cnty. Care Ctr., Inc., 466 F. Supp. 2d 1249, 1252 (D.N.M. 2004)(Molzen, M.J.). All three elements are met here. The Court addresses each element in turn.

On the first element, Liberty Oilfield complies with the NM Worker's Compensation Act's insurance requirement, because, at the time of the accident, the Master Client Agreement requires Wavsys to maintain worker's compensation insurance covering Ebrahimi's work for Liberty Oilfield.[5] In Ensey v. Ozzie's Pipeline Padder, Inc, the United States Court of Appeals for the

---

[5]Ebrahimi argues that "there was no contractual provision requiring workers' compensation insurance because the [Master Client Agreement] terminated prior to Mr. Ebrahimi's hire date and injury." Navid Ebrahimi's Response to Defendant Liberty Oilfield Services, LLC's Motion for Summary Judgment, filed April 30, 2025 (Doc. 118)(citing Unredacted Master Client Agreement at 1 & § 10.1, at 5 (indicating that the Master Client Agreement's "Effective Date" is January 15, 2021, and that the agreement "shall continue in full force for a period of one (1) year following the Effective Date") and Email from Ken Rafferty to Joseph Brown at 1 (dated April 29, 2022), filed April 30, 2025 (Doc. 118-1)(indicating that Liberty Oilfield offers Ebrahimi a job and that Ebrahimi accepts that job offer, through Wavsys, on April 29, 2022)). The Court disagrees with Ebrahimi's argument. Because New York law governs the Master Client Agreement, see supra, at 11, New York law determines whether the Master Client Agreement's insurance requirement remains in effect when Ebrahimi gets injured on July 2, 2022. New York law "is clear that even where an agreement expires by its terms, if the parties continue to perform as before, 'an implication arises that they have mutually assented to a new-contract containing the same provisions as the old.'" Tchrs. Ins. & Annuity Ass'n of Am. v. Ormesa Geothermal, 791 F. Supp. 401, 415 (S.D.N.Y. 1991)(Wood, J.)(quoting Martin v. Campanaro, 156 F.2d 127, 129 (2d Cir. 1946)); 22 N.Y. Jur. 2d Contracts § 224 (stating that, "where an agreement expires by its terms, and, without more, the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same provisions as the old"). Because Liberty Oilfield and Wavsys LLC "continue to perform as before" after January 15, 2022, Liberty Oilfield and Wavsys LLC "have mutually assented to a new contract containing the same provisions as the old," including the requirement that Wavsys LLC maintain worker's compensation insurance covering Ebrahimi. 22 N.Y. Jur. 2d Contracts § 224.

Tenth Circuit faces an analogous situation and reaches the same conclusion. See Ensey v. Ozzie's Pipeline Padder, Inc., 446 F. App'x 977, 978 (10th Cir. 2011)(unpublished)[6]("Ensey"). In Ensey, Ozzie's Pipeline Padder, Inc., a company that leases pipeline-padding machines and trains its employees to operate them, enters into a contract with Rockford Corporation, a company that hires those machine operators to perform mechanical work. See Ensey, 446 F. App'x at 978. The contract states that Ozzie's Pipeline will provide names of qualified operators and requires Rockford Corp. to pay those operators wages and benefits and maintain worker's compensation insurance. See Ensey, 446 F. App'x at 978. After John Ensey gets injured while working on a Rockford Corp. project, Ensey sues Ozzie's Pipeline, and Ozzie's Pipeline raises, as a defense, the Worker's Compensation Act's exclusive remedy provision. See Ensey, 446 F. App'x at 979. The Tenth Circuit sides with Ozzie's Pipeline, reasoning that "[t]he underlying principle" of the exclusivity provision "is that an employer complies with its responsibilities under the NM Workers' Compensation Act when it contractually ensures that the co-employer will purchase insurance." Ensey, 446 F. App'x at 981. Noting that "[i]t is unusual for a contractual provision to come free to the party benefiting from the provision," the Tenth Circuit concludes that "basic economics [] tells

---

[6]Ensey v. Ozzie's Pipeline Padder, Inc., 446 F. App'x 977 (10th Cir. 2011), is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored . . . . However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Ensey v. Ozzie's Pipeline Padder, Inc., has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

us that Ozzie's likely paid for the requirement that Rockford procure workers' compensation insurance by reducing what Rockford would otherwise have to pay Ozzie's to lease the padding machine." Ensey, 446 F. App'x at 981. Accordingly, the Tenth Circuit holds that the exclusivity provision protects Ozzie's Pipeline from Ensey's personal injury claims, "because its contract with Rockford required Rockford to obtain workers' compensation insurance for Mr. Ensey and Mr. Ensey failed to produce evidence to overcome the inference that Ozzie's therefore contributed to paying the insurance premium." Ensey, 446 F. App'x at 978. Similarly, here, the Master Client Agreement requires Liberty Oilfield's co-employer, Wavsys LLC, to maintain worker's compensation insurance covering Ebrahimi's work for Liberty Oilfield, and Ebrahimi does not "produce evidence to overcome the inference that" Liberty Oilfield "therefore contributed to paying the insurance premium." Ensey, 446 F. App'x at 978. Accordingly, Liberty Oilfield complies with the NM Worker's Compensation Act's insurance requirements.

On the second element, Ebrahimi gets injured while "performing service arising out of and in the course of his employment," because he gets injured while working, under Liberty Oilfield's control, on a Liberty Oilfield project. N.M.S.A. § 52-1-9. "[A]n injury occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." Grimes v. Wal-Mart Stores Inc., 2007-NMCA-028, ¶ 7, 141 N.M. 249, 251, 154 P.3d 64, 66, cert. denied, 2007-NMCERT-003, 141 N.M. 401, 156 P.3d 39. See Edens v. N.M. Health & Soc. Servs. Dep't, 1976-NMSC-008, ¶ 11, 89 N.M. 60, 63, 547 P.2d 65, 68 (stating this same rule). An entity may invoke the Worker's Compensation Act's exclusivity provision when the injured worker: (i) is not an independent contractor; and (ii) the hired work is a "part or process in the trade or business or undertaking" of the employer. N.M.S.A. § 52-1-22. See Harger v. Structural Servs., Inc., 1996-NMSC-018, ¶¶ 15-16, 121 N.M. 657, 664, 916 P.2d 1324,

1331 (evaluating whether a general contractor may invoke the NM Worker's Compensation Act's exclusivity provision and adopting the Restatement (Second) of Agency's approach to determining whether a worker is an independent contractor).

On the first condition, Ebrahimi is not an independent contractor, because Liberty directs and controls his work in a way that "descends to the details or to the means and methods of performance." Burruss v. B. M. C. Logging Co., 1934-NMSC-023, ¶ 8, 38 N.M. 254, 31 P.2d 263, 264. See Restatement (Second) of Agency § 220 & cmt. e (1958)(stating that "[a] servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control" and that the distinction between a servant and an independent contractor "is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in accomplishing results"); supra, at 3-4 (Ebrahimi admitting that he gets injured after Thomas, a Liberty employee, directs him to carry heavy equipment). On the second condition, Ebrahimi's oilfield work is "part of process in the trade or business or undertaking" of Liberty Oilfield, because Ebrahimi's work is the type which Liberty Oilfield "would ordinarily do through employees" or is "an integral part" of the project." Romero v. Shumate Constructors, Inc., 1994-NMCA-137, ¶¶ 32-35, 119 N.M. 58, 69-70, 888 P.2d 940, 951-52, aff'd in part, rev'd in part sub nom. Harger v. Structural Servs., Inc., 1996-NMSC-018, ¶¶ 32-35, 121 N.M. 657, 916 P.2d 1324. See Harger v. Structural Servs., Inc., 1996-NMSC-018, ¶ 16, 121 N.M. 657, 664, 916 P.2d 1324, 1331 (affirming the Court of Appeals of New Mexico's "part or process or undertaking" analysis and agreeing that this phrase "should be read expansively"). Accordingly, Liberty Oilfield satisfies the exclusivity provision's second element, because Ebrahimi gets injured while "performing service arising out of and in the course of his employment" with Liberty Oilfield. N.M.S.A. § 52-1-9.

On the third condition, Ebrahimi's injury "is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted." N.M.S.A. § 52-1-9. The parties agree that Ebrahimi gets injured while working on a Liberty Oilfield project after Thomas, a Liberty Oilfield employee, directs him to lift heavy equipment. See supra, at 3-4. Neither party alleges that Ebrahimi's injury is "intentionally self-inflicted." N.M.S.A. § 52-1-9. Accordingly, Liberty Oilfield satisfies the third element of the NM Worker's Compensation Act's exclusivity provision. Because Liberty Oilfield satisfies all three elements, Ebrahimi may not pursue his personal injury claims against Liberty Oilfield.

**IT IS ORDERED** that: (i) Defendant Liberty Oilfield Services, LLC's Motion for Summary Judgment, filed February 6, 2025 (Doc. 77), is granted; (ii) all of the Plaintiff's claims against the Defendant are dismissed with prejudice; (iii) the case is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Anthony Glen Buzbee
David Bergen
Matthew J. Worrall
Priyanka Tirandaz Kasnavia
John Koch
The Buzbee Law Firm
Houston, Texas

--and--

Eva K. Blazejewski
Heather K. Hansen
Blazejewski & Hansen, LLC
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Ada B. Priest
Darci Carroll
Priest & Miller, LLP
Albuquerque, New Mexico

    *Attorneys for the Defendant*